IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TITUS HENDERSON,

                 Plaintiff,

  v.

DEAN STENSBERG, JARED HOY, CATHY A. JESS,
STEVE LANDREMAN, DANIEL GABLER,
DAVID WELLS, TIMOTHY BRENNAN,
NORTHPOINTE, INC., and COLLEEN FREY,

                 Defendants.[1]

OPINION and ORDER

18-cv-555-jdp

---

Plaintiff Titus Henderson, appearing pro se, alleges that prison officials discriminate against him and other African American prisoners in various parts of the parole process, including the use of a racially biased actuarial tool "Correctional Offender Management, Profiling for Alternative Sanctions" (COMPAS). I allowed Henderson to proceed with the following claims under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution:

- COMPAS was created by defendants David Wells, Timothy Brennan, and Northpointe Inc., who are aware of the program's racial bias. Northpointe won't upgrade the program for the DOC to make it more accurate without being paid to do so.

- Defendant DOC employees Jared Hoy, Dean Stensberg, Daniel Gabler, and Steve Landreman supported using COMPAS for parole decisions despite knowing that the program is biased against African Americans, and they won't pay Northpointe for the corrective upgrade.

- Defendant DOC employees Colleen Frey, Cathy Jess, Stensberg, and Gabler allow correctional officers to "fudge" his parole file and the files of other African

---

[1] I've amended the caption to reflect the proper spelling of defendants' names.

> American inmates with false negative comments that inmates are not privy to and thus not allowed to challenge.

- Defendant Frey refused to process Henderson's "parole plan," calling him a racial slur.

Defendants Northpointe, Wells, and Brennan (who I will call the "Northpointe defendants"), filed a motion to dismiss Henderson's claims against them under Federal Rule of Civil Procedure 12(b)(6), Dkt. 21, to which Henderson responded by filing a proposed supplement to his complaint, Dkt. 28. The Northpointe defendants in turn filed what they call a supplement to their motion to dismiss, but it is really a new motion raising an entirely new ground: a 2014 COMPAS assessment document shows that Henderson was given the *lowest* possible risk assessment. Dkt. 34. The remaining defendants (who I will refer to as the "state defendants") have filed motions for summary judgment on exhaustion grounds. Dkt. 34. The Northpointe defendants ask to join that motion. Dkt. 37.

**A. Motions to dismiss**

The Northpointe defendants have filed two motions asking me to dismiss Henderson's claims against them under Federal Rule of Civil Procedure 12(b)(6). The standard that I apply in considering those motions is "simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Plaintiffs must give defendants "fair notice of what the . . . claim is and the grounds upon which it rests" and include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

In their first motion, the Northpointe defendants contend that Henderson has not plausibly explained what they have done to violate his rights or how they have acted "under color of law" as is required for even a non-state actor to be sued under 28 U.S.C. § 1983. As I

2

stated in the screening order, private actors act under color of law when they work jointly with state actors to violate a person's rights. *See, e.g.*, *L.P. v. Marian Catholic High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) ("A private person acts under color of state law when she is a willful participant in joint action with the State or its agents." (internal quotation omitted)); *see also Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). I granted Henderson leave to proceed on equal protection claims against the Northpointe defendants because he alleges that they knowingly provided the DOC with the racially biased COMPAS program. But the Northpointe defendants argue that Henderson does not allege what individual defendants Wells and Brennan actually did to violate his rights. In addition to filing a response brief, Henderson filed a supplement to his complaint, in which he now alleges that Northpointe, Wells, and Brennan "entered a business contract" with the DOC for the use of COMPAS in parole decisions.

Under Federal Rule of Civil Procedure 15, I should freely give parties leave to amend their pleadings "when justice so requires." I conclude that it is appropriate to allow Henderson to expound on his allegations, so I'll consider the supplement. I conclude that his new allegation is enough to explain Wells's and Brennan's involvement in the alleged constitutional deprivation. But Henderson should be aware that at the summary judgment stage, he will have to present evidence supporting this allegation.

The Northpointe defendants raise two other arguments that I will reject. First, they argue that none of the alleged conduct is enough to show a conspiracy to violate Henderson's rights, and that there no allegations that they had any involvement in Parole Commission proceedings. But Henderson alleges that they gave the DOC what they knew was a racially biased product to use in parole decisions. At the pleading stage, that's enough to infer that they intended to harm African American inmates with the use of COMPAS in those proceedings.

3

Second, they argue that the Wisconsin Supreme Court has already concluded that the use of the COMPAS program in sentencing hearings does not violate a criminal defendant's due process rights. *State v. Loomis*, 2016 WI 68, ¶ 4, 371 Wis. 2d 235, 881 N.W.2d 749. But that case involved a specific question: "whether the use of a COMPAS risk assessment at sentencing violates a defendant's right to due process, either because the proprietary nature of COMPAS prevents defendants from challenging the COMPAS assessment's scientific validity, or because COMPAS assessments take gender into account." *Id.*, ¶ 6. But *Loomis* wasn't an equal protection case, and the court noted that studies "raise concerns regarding how a COMPAS assessment's risk factors correlate with race." *Id.*, ¶ 63. I cannot conclude, based on *Loomis*, that Henderson fails to state claims against the Northpointe defendants. So I'll deny their first motion to dismiss.

After Henderson filed his supplement to the complaint, the Northpointe defendants filed another motion to dismiss, Dkt. 29, in which they attach a COMPAS report containing the results of a risk assessment screening performed in August 2014, showing Henderson's "Overall Risk Potential" as 1—the lowest score on a scale of 1 to 10. Dkt. 31, at 3. I may consider documents referred to in the complaint and that are central to the plaintiff's claims without converting the motion to dismiss into a summary judgment motion. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994). That report makes it appear that COMPAS did not harm Henderson, which would be a reason to dismiss all of his claims about the use of COMPAS.

But it is not clear from the pleadings alone that this particular report is the same risk assessment that was used in Henderson's parole decisions. Because I cannot decide this issue solely on the pleadings and the 2014 COMPAS report, I will convert the motion to dismiss

into a summary judgment motion. I'll have the Northpointe defendants submit a new brief with a set of proposed findings of fact and all the evidence they think is needed to support their argument. Then Henderson will have an opportunity to respond.

**B. Exhaustion**

The state defendants have filed a motion for summary judgment on exhaustion grounds, Dkt. 34, and the Northpointe defendants seek to join in that motion, Dkt. 37.

Under the Prison Litigation Reform Act, prisoners must exhaust all available administrative remedies before filing a lawsuit in federal court about prison conditions. 42 U.S.C. § 1997e(a). To comply with 1997e(a), a prisoner must take each step within the administrative process, *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), which includes following instructions for filing an initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), as well as filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005), "in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. To exhaust administrative remedies in Wisconsin, inmates must follow the inmate complaint review process set forth in the Wisconsin Administrative Code ch. DOC 310. The purpose of these requirements is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88–89 (2006). Failure to exhaust administrative remedies under § 1997e(a) is an affirmative defense that must be proven by the defendants. *Davis v. Mason*, 881 F.3d 982, 985 (7th Cir. 2018).

The state defendants seek only partial summary judgment on Henderson's claims against them. They state that there are no administrative remedies to challenge parole decisions, so they do not seek summary judgment on claims directly about parole decisions made using COMPAS. They also do not move for summary judgment on Henderson's claim

that defendant Frey refused to process Henderson's "parole plan," calling him a racial slur. So those claims will remain in the case.

The state defendants argue that defendant Hoy should be dismissed because Henderson doesn't allege that Hoy was directly involved in a parole decision. But I granted Henderson leave to proceed on a claim based on his allegation that Hoy called the program a "giant correctional pinball machine" but supported using the system anyway, which I inferred meant that Hoy had some control over use of COMPAS in parole decisions. *See* Dkt. 13, at 2, 4. So I will continue to include Hoy as a defendant in Henderson's set of claims about parole decisions.

For the state defendants, that leaves Henderson's set of claims that Frey, Jess, Stensberg, and Gabler allow correctional officers to "fudge" his parole file and the files of other African American inmates with false negative comments that inmates are not privy to and thus not allowed to challenge. Henderson says that he did exhaust these claims with three grievances, Nos. RCI-2015-18251, RCI-2015-22696, and RCI-2016-960.

The '22696 grievance is about Henderson's claim that Frey refused to process his "parole plan," on which defendants do not seek summary judgment.

Henderson says that he fully exhausted the '18251 grievance, but that grievance, about black inmates being denied programming, was rejected under DOC regulations for not being specific enough. *See* Dkt. 41-2. Henderson appealed that rejection but he lost the appeal. So while it's true that Henderson ran out of appeals for this rejection, he didn't properly exhaust the grievance because he failed to properly follow DOC pleading regulations. It is also not apparent what that grievance has to do with his claim that state defendants altered his parole file. So this grievance doesn't exhaust Henderson's claims against Frey, Jess, Stansberg, and Gabler.

Henderson makes two related arguments about the availability of the grievance procedures: the institution complaint examiner threatened to confiscate his grievances, as he alleged in the '960 grievance, and he says that prison staff wouldn't extend his legal loan to give him postage to mail his appeal. *See* Dkt. 41-3. But the '960 grievance was denied because the examiner had in fact recently processed several recent grievances, and Henderson doesn't present any evidence suggesting that he really couldn't file grievances. Instead, the grievance history report filed by the state defendants shows that he was able to file more than 30 grievances in the preceding year. *See* Dkt. 36-1. And I've already rejected his argument about legal loans in another of his recent cases, because Henderson had free weekly postage available to him in addition to the legal loan program. *See Henderson v. Jess*, No. 18-cv-680-jdp, 2020 WL 1154897, at *4 (W.D. Wis. Mar. 10, 2020). Because Henderson fails to show that he exhausted his administrative remedies for the claims about altering his parole file—other than the claim against Frey—I'll dismiss those claims. That means that defendant Jess will be dismissed from the case.

Henderson also asks for a hearing under *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), to resolve the exhaustion motion. Dkt. 44. But because the exhaustion question does not boil down to disputed issues of material fact with regard to any of his claims, I will deny that motion.

As for the Northpointe defendants, they contend that they should granted summary judgment because Henderson hasn't filed any grievances against them or about COMPAS, and he doesn't allege that they were directly involved in any of his parole decisions. But the state defendants already concede that there isn't an administrative remedy for the allegedly unfair parole decisions here, and Henderson alleges that the wrong he suffered was in part caused by

7

COMPAS's bias. So the Northpointe defendants are in the same boat as the state defendants on those claims: because there wasn't an administrative remedy available to Henderson, he didn't fail to exhaust the claims. I'll deny the Northpointe defendants' exhaustion motion.

ORDER

IT IS ORDERED that:

1. Plaintiff Titus Henderson's motion to amend his complaint, Dkt. 28, is GRANTED.

2. The Northpointe defendants' first motion to dismiss, Dkt. 21, is DENIED.

3. The Northpointe defendants' second motion to dismiss, Dkt. 29, is converted to a motion for summary judgment. The Northpointe defendants may have until April 9, 2020, to file their materials in support. Plaintiff may have until April 30, 2020, to file a response. Defendants may have until May 11, 2020, to file a reply.

4. The state defendants' motion for summary judgment on exhaustion grounds, Dkt. 34, is GRANTED in part. Defendant Jess is DISMISSED from the case.

5. The Northpointe defendants' motion for summary judgment on exhaustion grounds, Dkt. 37, is DENIED.

6. Plaintiff's motion for a *Pavey* hearing, Dkt. 44, is DENIED.

Entered March 20, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge